IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT IN AND FOR
HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

JEAN M. MCRAE,

    Plaintiff,

Case No.: CA 10-1702

Vs.

EMPIRE INDEMNITY
INSURANCE COMPANY,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW, the plaintiff sue defendant and allege:

1. This is an action for damages in excess of $15,000.00.

2. Plaintiff is the owner of a home located at 8455 Jasmine Drive, Brooksville, Fl 34601, Florida.

3. Defendant **EMPIRE INDEMNITY INSURANCE COMPANY** maintained an office for the regular conduct of business in Hernando County, Florida.

4. The area in which the plaintiff's home is located has been long known as area in which sinkholes, caused by the sudden settlement or collapse of the earth resulting from subterranean voids created by the action of water on a limestone or similar rock formation, are a prevalent and common occurrence; many areas of subsidence near and around the plaintiff home over many years have been determined to have occurred as a result of karsts (sinkholes).

5. The defendant is authorized to execute and deliver property insurance in this state, and did, in fact, execute and deliver in this state, a policy of property insurance

covering the plaintiff's property against certain losses. A copy of the policy is attached as exhibit "A".

6. The policy of property insurance issued by the defendant to the plaintiff and covering the plaintiff's property against loss was in full force and effect during December 20, 2008 to December 20, 2009.

7. Incorporated into the policy of property insurance issued by the defendant and to the plaintiff was coverage for insurable sinkhole losses on any structure, including contents of personal property contained therein.

8. On or about May 15, 2008, the plaintiff suffered a loss under the policy of insurance in the form of a collapse of earth, resulting in damage to the structure and the contents therein, of the property insured by the policy.

9. Within a reasonable time after the loss, plaintiff notified defendant of the loss sustained, provided defendant with all the details surrounding the loss, and allowed the defendant to study, inspect, and survey the property, thus fully complying with all provisions of the insurance policy relating to giving notice of the loss and cooperating in the investigation of the loss.

10. Plaintiff has performed all other conditions precedent of the insurance policy that Plaintiff is required to perform as a prerequisite to recovery under the policy.

11. At all times relevant to this complaint, Plaintiff's property was not insured by any insurance other than that issued by defendant.

12. Plaintiff has demanded payment from defendant under the policy for the damages caused by the loss.

13. On or about October 28, 2008, defendant denied the claim and refused to pay any part of the loss sustained by the plaintiff as a result of the collapse of the earth.

14. Because of defendant's refusal and failure to pay any part of the loss to Plaintiff, Plaintiff was compelled to retain the services of the undersigned counsel to prosecute this action. Plaintiff has become obligated to counsel for payment of reasonable attorneys' fees and defendant is obligated to pay such fees pursuant to F.S. 627.428.

WHEREFORE, Plaintiff demands judgment against defendant for damages in excess of $15,000.00, together with reasonable attorneys' fees pursuant to F.S. 627.428, costs of suit, interest form the date of loss, and any other and further relief as the Court may deem proper.

### DEMAND FOR JURY TRIAL

Plaintiff, pursuant to the applicable Rules of Civil Procedure, hereby demands a trial by jury on all issues so triable.

_/s/ Robert M. Austin_
Robert M. Austin, Esquire
AUSTIN & LAURATO, P.A.
1902 W. Cass Street
Tampa, Florida 33606
(813)258-0624
(813)258-4625 Facsimile
Florida Bar No.: 475092
Attorneys for Plaintiff

Empire Indemnity Insurance Company
13810 FNB Parkway
Omaha, NE 68154-5202

Toll Free Custc    Service: 1-800-278-9939
P.O. BOX 949, ORANGE, CA 92856-6949

**Additional Named Insured Certificate**

LOAN NUMBER: 20557740

**ADDITIONAL NAMED INSURED**
JEAN M MCRAE
JEANNE MCRAE
8455 JASMINE DR
BROOKSVILLE FL 34601-2753

NAMED INSURED MORTGAGEE
OPTION ONE MORTGAGE CORPORATION
ITS SUCCESSORS AND/OR ASSIGNS
P.O. BOX 949
ORANGE, CA 92856-6949

| | | Amount of Insurance | Premium |
|---|---|---|---|
| POLICY NUMBER LRE620107181 | Dwelling | $ 106,000 | $ 1,897.40 |
| POLICY TERM: | Personal Property Endorsement | $ 0.00 | $ 0.00 |
| FROM 12/20/07    TO 12/20/08 | Additional Living Expense Endorsement | $ 0.00 | $ 0.00 |
| | Other Endorsements | | $ 0.00 |
| ☐ NOON    ☒ 12:01am | Deductible - per loss | | |
| | Hurricane    Greater Of $2,000 Or 2% Of Coverage Amount | | |
| | Vandalism & Malicious Mischief | | |
| DESCRIBED LOCATION | Property is VACANT at time of loss | $ 1,000 | |
| 8455 JASMINE DR | Property is NOT VACANT at time of loss | $ 1,000 | |
| BROOKSVILLE FL 34601 | All Other covered Losses | $ 500 | |
| | | Limit of Liability | Premium |
| ENDORSEMENTS ATTACHED AND FORMING A PART OF THE POLICY | Personal Liability Endorsement | $ 0.00 | $ 0.00 |
| RP1182 (0101),RP1200 (0397),RP1201 (0397),RP1509 (0397), RP1609 (0397),RP2000 (1001),RP1909 (0505) | Medical Payments | $ 0.00 | |
| | SURPLUS LINES TAX | 5.00 % | $ 94.87 |
| | SERVICE FEE | | $ 3.79 |
| | FHCF ASSESSMENT | 1.00 % | $ 18.97 |
| | TOTAL CHARGES | | $ 2,015.03 |

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.

Countersignature: *[signature]*

Producing Agent:
Michael C. Seminario, License Number A238341
ZC Sterling Insurance Agency, Inc.
8655 Baypine Road, Building 6
Jacksonville, FL 32256-7309

(see back of form)

Surplus Lines Agent:
Michael C. Seminario, License Number A238341
8655 Baypine Road, Building 6
Jacksonville, FL 32256-7309

RP1182 0101

To report a ___m, please contact our Claim Departmer : 1-800-824-8562
or, you may report a new claim using our website at www.zcsclaims.com

## For Customer Service questions, please call our toll free Customer Service Number at: 1-800-278-9939

**Personal Property and Personal Liability Coverages** – If an amount of Insurance and a premium charge are shown above for this coverage, we will cover your personal property in the Dwelling against the perils specified in the Personal Property Endorsement. If a Limit of Liability and a premium charge is shown for this coverage, we will also cover your personal liability. Please refer to the applicable endorsement for a description of the type and scope of coverage provided. These endorsements are available only for a residence that is owner occupied. **These coverages are void if the residence is vacant or occupied by someone other than the Additional Named Insured shown above.**

**DEDUCTIBLES:** Please refer to the deductibles shown for the coverages provided by this policy.

Subject to the terms and provisions of the Mortgage Service Program, Residential Property Mortgagee's Policy, including but not limited to the Dwelling Coverage Form attached hereto, it is agreed that the insurance applies to the property described above and to any person shown as an Additional Named Insured with respect to such property, subject to the following additional provisions:

(a) The above Named Insured Mortgagee is authorized to act for such Additional Named Insured(s) in all matters pertaining to this insurance including receipt of Notice of Cancellation; and return premium, if any.
(b) The above Named Insured Mortgagee is authorized to advance all funds to be recovered from the Additional Named Insured for the insurance afforded.
(c) Loss, if any, shall be adjusted with and payable to the above Named Insured Mortgagee and the Additional Named Insured as their interest may appear, either by a single instrument so worded or by separate instruments payable respectively to the Named Insured Mortgagee and the Additional Named Insured, at the company's option.

## Table of Contents

|  | Page |
|---|---|
| AGREEMENT | 1 |
| DEFINITIONS | 1 |
| COVERAGES | 1 |
| OTHER COVERAGES | 1 |
| PERILS INSURED AGAINST | 2 |
| GENERAL EXCLUSIONS | 3 |
| CONDITIONS | 4 |

RP1200 0397

RESIDENTIAL PROPERTY

# Dwelling Coverage Form

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "Named Insured Mortgagee" and the "Additional Named Insured" shown in the Declarations. "We", "us" and "our" refer to the Company providing this insurance.

## COVERAGES

This insurance applies to the Described Location, Coverages for which an Amount of Insurance is shown and Perils Insured Against for which a Premium is stated.

**COVERAGE A – Dwelling**

We cover:

1. the dwelling on the Described Location shown in the Declarations, used principally for dwelling purposes not to exceed four (4) living units, including, but not limited to, individually owned townhouses or permanently situated mobile homes;

2. structures attached to the dwelling;

3. materials and supplies located on or next to the Described Location used to construct, alter or repair the dwelling or other structures on the Described Location; and

4. if not otherwise covered in this policy, building equipment, and outdoor equipment used for the service of and located on the Described Location.

This coverage does not apply to land, including land on which the dwelling is located.

**COVERAGE B – Other Structures**

We cover other structures on the Described Location, set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. used in whole or in part for commercial, manufacturing or farming purposes; or
2. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

## OTHER COVERAGES

1. **Other Structures.** You may use up to 10% of the Coverage A amount of insurance for loss by a Peril Insured Against to other structures described in Coverage B.

    Use of this coverage does not reduce the Coverage A amount of insurance for the same loss.

2. **Debris Removal.** We will pay your reasonable expense for the removal of:
    a. debris of covered property if a Peril Insured Against causes the loss; or
    b. ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

    Debris removal expense is included in the amount of insurance applying to Coverage A.

3. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

This coverage:

a. does not increase the amount of insurance that applies to the covered property;

b. does not relieve you of your duties, in case of a loss to covered property, as set forth in Condition 4.b.

Reasonable Repairs is included in the amount of insurance applying to Coverage A.

4. **Collapse.** We insure for risk of direct damage physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

   (1) hidden decay;
   (2) hidden insect or vermin damage;
   (3) weight of contents, equipment, animals or people;
   (4) weight of rain which collects on a roof;
   (5) use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items (1), (2), (3), (4) or (5) unless the loss is a direct result of the collapse of a building.

   Collapse does not include settling, cracking or shrinking.

   This coverage does not increase the amount of insurance applying to the damaged covered property.

## PERILS INSURED AGAINST

**COVERAGE A – DWELLING**
**COVERAGE B – OTHER STRUCTURES**

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property; however, we do not insure loss:

1. involving collapse, other than as provided in Other Coverages 4.;

2. caused by:
   a. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is being constructed;
   b. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:
      (1) fence, pavement, patio or swimming pool;
      (2) foundation, retaining wall or bulkhead; or
      (3) pier, wharf or dock;
   c. theft of property not part of a covered building or structure;
   d. theft in or to a dwelling or structure under construction;
   e. wind, hail, ice, snow or sleet to outdoor radio or television antennas and aerials including lead-in wiring, masts or towers;
   f. constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;
   g. (1) wear and tear, marring, deterioration;
      (2) inherent vice, latent defect, mechanical breakdown;
      (3) smog, rust or other corrosion, mold, wet or dry rot;
      (4) smoke from agricultural smudging or industrial operations;
      (5) discharge, dispersal, seepage, migration, release or escape of pollutants;
         Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;
      (6) settling, shrinking, bulging or expansion, including resultant cracking, or pavements, patios, foundations, walls, floors, roofs or ceilings; or
      (7) birds, vermin, rodents, insects or domestic animals.

   If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

RP1201 0397   Includes copyrighted material of Insurance Services Office, Inc, with its permission. Copyright, Insurance Services Office, Inc. 1988   Page 2 of 6

   3. excluded under General Exclusion

Under items 1 and 2, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

## GENERAL EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
    a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the use, construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.
    b. **Earth Movement**, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking; rising or shifting; unless direct loss by:
        (1) fire;
        (2) explosion; or
        (3) breakage of glass or safety glazing material which is part of a building, storm door or storm window;
        ensues and then we will pay only for the ensuing loss.
    c. **Water Damage**, meaning:
        (1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
        (2) water which backs up through sewers or drains or which overflows from a sump; or
        (3) water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.
        Direct loss by fire or explosion resulting from water damage is covered.
    d. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the Described Location. But, if a Peril Insured Against ensues on the Described Location, we will pay only for that ensuing loss.
    e. **Neglect**, meaning your neglect to use all reasonable means to save and preserve property at and after the time of a loss.
    f. **War**, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.
    g. **Nuclear Hazard**, to the extent set forth in the Nuclear Hazard Clause of the Conditions.
    h. **Intentional Loss**, meaning any loss arising out of any act committed:
        (1) by or at the direction of you or any person or organization named as an additional insured; and
        (2) with the intent to cause a loss.
2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.
    a. **Weather conditions**. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;
    b. **Acts or decisions**, including the failure to act or decide, of any person, group, organization or governmental body;
    c. **Faulty, inadequate or defective**:
        (1) planning, zoning, development, surveying, siting;
        (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
        (3) materials used in repair, construction, renovation or remodeling; or
        (4) maintenance;
    of part or all of any property whether on or off the Described Location.
3. We do not insure trees, shrubs or other plants for losses of any kind.

## CONDITIONS

1. **Policy Period.** This policy applies only to loss which occurs during the policy period.

2. **Insurable Interest and Amount of insurance.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:
   a. for an amount greater than the interest of a person insured under this policy; or
   b. for more than the applicable amount of insurance.

   If the Described Property is vacant and the mortgage on the property has been declared in default by the mortgagee at the time of a loss, we shall be liable for no more than the Mortgagee's interest in the property at the time of loss.

   The mortgagee's interest is represented by the mortgagor's unpaid balance, less unearned interest and finance charges, less unearned insurance premiums, less collection and foreclosure expenses, and less late charges and penalties added to the mortgagor's unpaid balance after the inception date of this policy.

3. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, you have:
   a. intentionally concealed or misrepresented any material fact or circumstance;
   b. engaged in fraudulent conduct; or
   c. made false statements;

   relating to this insurance.

4. **Your Duties After Loss.** In case of a loss to your covered property, you must see that the following are done:
   a. give prompt notice to us or our agent;
   b. (1) protect the property from further damage;
      (2) make reasonable and necessary repairs to protect the property; and
      (3) keep an accurate record of repair expenses;
   c. as often as we reasonably require:
      (1) show the damaged property;
      (2) provide us with records and documents we request and permit us to make copies; and
      (3) submit to examination under oath, while not in the presence of any other named insured, and sign the same;
   d. send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
      (1) the time and cause of loss;
      (2) your interest and that of all others in the property involved and all liens on the property;
      (3) other insurance which may cover the loss;
      (4) changes in title or occupancy of the property during the term of the policy;
      (5) specifications of damaged buildings and detailed repair estimates;

5. **Loss Settlement.** Covered property losses are settled as follows:
   a. (1) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and
      (2) Structures that are not buildings;
      at actual cash value at the time of loss but not more than the amount required to repair or replace.
   b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:
      (1) We will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:
         (a) the amount of insurance under this policy that applies to the building;
         (b) the replacement cost of that part of the building damaged for like construction and use on the same premises; or
         (c) the necessary amount actually spent to repair or replace the damaged building.
      (2) We will pay no more than the actual cash value of the damage unless:
         (a) actual repair or replacement is complete; or
         (b) the cost to repair or replace the damage is both:

(i) less than 5% of the amount of insurance in this policy on the building; and
(ii) less than $2,500.
(3) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.

6. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

7. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   Each party will:
   a. Pay its own appraiser; and
   b. bear the other expenses of the appraisal and umpire equally.

8. **Other Insurance.** If property covered by this policy is also covered by other fire insurance, we will pay on an excess basis only.

9. **Subrogation.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If any assignment is sought, the person insured must sign and deliver all related papers and cooperate with us.

10. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

11. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

12. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:
    a. reach an agreement with you;
    b. there is an entry of a final judgment; or
    c. there is a filing of an appraisal award with us.

    No coverage will be available to any mortgagee other than that shown as the Named Insured Mortgagee on the Declarations page of this policy.

13. **Abandonment of Property.** We need not accept any property abandoned by you.

14. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

15. **Cancellation.**
    a. Coverage under this policy shall automatically and without prior notice cancel when the Named Insured Mortgagee no longer has an interest in the Described Property or when the Named Insured Mortgagee has been provided with another policy by the Additional Named Insured that meets the requirements of the Named Insured Mortgagee as set forth in the mortgage agreement applicable to the Described Property.
    b. This policy may be canceled by the Named Insured Mortgagee by returning the policy to us or notifying us in writing the date cancellation is to become effective.
    c. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the declarations.

    Proof of mailing will be sufficient proof of notice.

  (1) We may cancel this policy by mailing notice of cancellation to the Additional Named Insured at the address shown on the Additional Named Insured Endorsement by delivering the notice not less than 30 days prior to the effective date of the cancellation.

  (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

  (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:
   (a) if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy, or
   (b) if the risk has changed substantially since the policy was issued.

  This can be done by letting you know at least 30 days before the date cancellation takes effect.

  (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

 d. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

 e. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**16. Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to the Additional Named Insured, or mailing to the Additional Named Insured at the mailing address shown on the Additional Named Insured Endorsement, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**17. Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

**18. Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**19. Assignment.** Assignment of this policy will not be valid unless we give our written consent.

**20. Death.** If you die, we insure:
 a. your legal representatives but only with respect to the property of the deceased covered under the policy at the time of death;
 b. with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**21. Nuclear Hazard Clause.**
 a. "Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.
 b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.
 c. This policy does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**22. Recovered Property.** If you or we recover any any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted on the amount you received for the recovered property.

**23. Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

# SPECIAL PROVISIONS

**PERILS INSURED AGAINST**

The following peril is added:

**Sinkhole Collapse**, meaning actual physical damage arising out of, or caused by, sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formations.

The **Earth Movement** exclusion does not apply to this peril.

**GENERAL EXCLUSIONS**

1. **Ordinance or Law** is deleted and replaced by the following:
1. **Ordinance or Law,** meaning any ordinance or law:
   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris.
   b. The requirements of which result in a loss in value to property; or
   c. Requiring you or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This exclusion applies whether or not the property has been physically damaged.

2. **Earth Movement** is deleted and replaced by the following:
2. **Earth Movement,** meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:
   a. Fire; or
   b. Explosion;

   ensues and then we will pay only for the ensuing loss.

4. **Power Failure** is deleted and replaced by the following:
4. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the Described Location. But if the failure of power or other utility service results in a loss, from a PERIL INSURED AGAINST on the Described Location, we will pay for the loss or damage caused by that PERIL INSURED AGAINST.

**CONDITIONS**

3. **Concealment or Fraud** is deleted and replaced by the following:
3. **Concealment or Fraud.** With respect to all persons insured under this policy, we provide no coverage for loss if, whether before or after a loss, one or more persons insured under this policy have:
   a. Intentionally concealed or misrepresented any material fact or circumstance;
   b. Engaged in fraudulent conduct; or
   c. Made false statements;
   relating to this insurance.

7. **Appraisal** is deleted and replaced by the following:
7. **Mediation or Appraisal.** If you and we fail to agree on the amount of loss, either may:
   a. Demand a mediation of the loss in accordance with the rules established by the Florida Insurance Department. The loss amount must be $500 or more, prior to application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. The settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement and, you have not rescinded the settlement within 3 business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you.

We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the mediator's fee for that rescheduled conference. However, if we fail to appear at a mediation conference, we will pay your actual cash expenses you incur in attending the conference and also pay the mediator's fee for the rescheduled conference.

b. Demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

Each party will:

(1) Pay its own appraiser; and

(2) Bear the other expenses of the appraisal and umpire equally.

If, however, we demanded the mediation and either party rejects the mediation results, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss.

10. **Suit Against Us** is deleted and replaced by the following:

10. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within 5 years after the date of loss.

12. **Loss Payment** is deleted and replaced by the following:

12. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable:

a. 20 days after we receive your proof of loss and reach written agreement with you; or

b. 60 days after we receive your proof of loss and:

(1) There is an entry of a final judgment; or

(2) There is a filing of an appraisal award or a mediation settlement with us.

15. **Cancellation.** Paragraphs **c., d.,** and **e.** are deleted and replaced by the following:

c. When this policy has been in effect for 90 days or less, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.

We may also cancel this policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

(1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

(2) When this policy has been in effect for 90 days or less, we may cancel for any reason except we may not cancel:

(a) On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the insured has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

(b) On the basis of filing claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may cancel this policy if:

(i) The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or

(ii) If you have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

Except as provided in item **15.c.** above, we will let you know of our action at least 20 days before the date cancellation takes effect.

  (3) When this policy has been effect for more than 90 days, we may c̶ ⁿ̶:
    (a) If there has been a material misstatement;
    (b) If the risk has changed substantially since the policy was issued;
    (c) In the event of failure to comply with underwriting requirements established by us within 90 days of the effective date of coverage;
    (d) If the cancellation is for all insureds under policies of this type for a given class of insureds;
    (e) On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the insured has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or
    (f) On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim, if:
      (i) The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or
      (ii) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.
    This can be done by letting you know at least 90 days before the date cancellation takes effect.
  d. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.
  e. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**16. Non-Renewal** is deleted and replaced by the following:

**16. Non-Renewal.** We may elect not to renew this policy. However, we will not non-renew this policy:
  a. On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the insured has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or
  b. On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may elect not to renew this policy if:
    (1) The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or
    (2) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.
  We may do so by delivering to you or mailing to you at your mailing address shown in the Declarations, written notice, together with the specific reasons for non-renewal, at least 90 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

The following condition is added:

**24. Renewal Notification.** If we elect to renew this policy, we will let you know, in writing:
  a. Of our decision to renew this policy; and
  b. The amount of renewal premium payable to us.
  This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

All other provisions of this policy apply.

# SPECIAL PROVISIONS

**GENERAL EXCLUSIONS**

1. **Ordinance or Law** is deleted and replaced by the following:
1. **Ordinance or Law,** meaning any ordinance or law:
   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris.
   b. The requirements of which result in a loss in value to property; or
   c. Requiring you or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This exclusion applies whether or not the property has been physically damaged.

3. **Power Failure** is deleted and replaced by the following:
3. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the Described Location. But if the failure of power or other utility service results in a loss, from a PERIL INSURED AGAINST on the Described Location, we will pay for the loss or damage caused by that PERIL INSURED AGAINST.

**CONDITIONS**

3. **Concealment or Fraud** is deleted and replaced by the following:
3. **Concealment or Fraud.** With respect to all persons insured under this policy, we provide no coverage for loss if, whether before or after a loss, one or more persons Insured under this policy have:
   a. Intentionally concealed or misrepresented any material fact or circumstance;
   b. Engaged in fraudulent conduct; or
   c. Made false statements;

   relating to this insurance.

7. **Appraisal** is deleted and replaced by the following:
7. **Mediation or Appraisal.** If you and we fail to agree on the amount of loss, either may:
   a. Demand a mediation of the loss in accordance with the rules established by the Florida Insurance Department. The loss amount must be $500 or more, prior to application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. The settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement and, you have not rescinded the settlement within 3 business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you.

   We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the mediator's fee for that rescheduled conference. However, if we fail to appear at a mediation conference, we will pay your actual cash expenses you incur in attending the conference and also pay the mediator's fee for the rescheduled conference.

   b. Demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

   Each party will:
   (1) Pay its own appraiser; and
   (2) Bear the other expenses of the appraisal and umpire equally.

If, however, we demanded mediation and either party rejects the mediation results, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss.

10. **Suit Against Us** is deleted and replaced by the following:

10. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within 5 years after the date of loss.

12. **Loss Payment** is deleted and replaced by the following:

12. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable:
   a. 20 days after we receive your proof of loss and reach written agreement with you; or
   b. 60 days after we receive your proof of loss and:
      (1) There is an entry of a final judgment; or
      (2) There is a filing of an appraisal award or a mediation settlement with us.

15. **Cancellation.** Paragraphs **c.**, **d.**, and **e.** are deleted and replaced by the following:
   c. When this policy has been in effect for 90 days or less, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.

   We may also cancel this policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you, or mailed to you at your mailing address shown in the Declarations.

   Proof of mailing will be sufficient proof of notice.
   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.
   (2) When this policy has been in effect for 90 days or less, we may cancel for any reason except we may not cancel:
      (a) On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the insured has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or
      (b) On the basis of filing claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may cancel this policy if:
         (i) The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or
         (ii) If you have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

   Except as provided in item **15.c.** above, we will let you know of our action at least 20 days before the date cancellation takes effect.
   (3) When this policy has been in effect for more than 90 days, we may cancel:
      (a) If there has been a material misstatement;
      (b) If the risk has changed substantially since the policy was issued;
      (c) In the event of failure to comply with underwriting requirements established by us within 90 days of the effective date of coverage;
      (d) If the cancellation is for all insureds under policies of this type for a given class of insureds;
      (e) On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the insured has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or
      (f) On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim, if:

    (i) The total of such pr̶operty claim payments for this policy excee̶r the current policy limits of coverage for prope̶rty damage; or

    (ii) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

This can be done by letting you know at least 90 days before the date cancellation takes effect.

  d. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

  e. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**16. Non-Renewal** is deleted and replaced by the following:

**16. Non-Renewal.** We may elect not to renew this policy. However, we will not non-renew this policy:

  a. On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the insured has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

  b. On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may elect not to renew this policy if:

    (1) The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or

    (2) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

We may do so by delivering to you or mailing to you at your mailing address shown in the Declarations, written notice, together with the specific reasons for non-renewal, at least 90 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

The following condition is added:

**24. Renewal Notification.** If we elect to renew this policy, we will let you know, in writing:

  a. Of our decision to renew this policy; and

  b. The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

All other provisions of this policy apply.

Residential Property

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MOLD OR FUNGI EXCLUSION

This endorsement modifies coverage provided under the Dwelling Coverage Form. The following provisions apply to your policy.

**PERILS INSURED AGAINST**

Paragraph **2.g.(3)** is deleted and replaced by the following:

(3) Smog, rust or other corrosion, mold or other fungi, or wet or dry rot. This policy specifically excludes coverage for losses caused by or resulting from mold or other fungi, or wet or dry rot, which results directly or indirectly from either a covered or an excluded peril. We will not pay for the costs of testing, monitoring, abating, mitigating, removing, remediating, or disposing of mold or other fungi, or wet or dry rot. We will not be responsible for any supervision, instruction, recommendation, warning, or advice given or which should have been given or any obligation to share with or repay someone who must pay damages because of such injury or damage.

All other provisions of this policy apply.

RP2000 1001

Residential Property

# SPECIAL HURRICANE DEDUCTIBLE PROVISIONS

**HURRICANE DEDUCTIBLE**

In compliance with Florida Statutes 627.701, the **Hurricane Deductible** shown on the policy declaration is applied on an annual hurricane seasonal basis, rather than a per occurrence basis. The **Hurricane Deductible** shown on the policy declaration will apply to all covered losses caused by the peril of hurricane that occur during the calendar year. The **Hurricane Deductible** will be applied as indicated on the policy declaration for the first hurricane loss during any annual hurricane season. In the event of a second or subsequent hurricane loss within the same annual hurricane season, the **Hurricane Deductible** will be the greater of the remaining amount of the hurricane deductible shown on the policy declaration that was not charged for the first hurricane loss or the amount of the deductible shown on the policy declaration that applies to "all other perils."

The **Special Hurricane Deductible Provisions** apply only to losses caused by the hurricane peril which occur within the annual hurricane season for policies with an effective date of May 1, 2005 or later.

All other terms and conditions of the policy remain unchanged.

RP1909 0505

Residential Property